[No. 11526.    Department One. — March 7, 1889.]

JOHN   P.   STEARNS,   APPELLANT,   *v.*   JOHN   A. HOOPER   ET   AL.,   RESPONDENTS.

APPEAL — REVIEW OF EVIDENCE. — When there is material evidence to support all the findings of the court, or sufficient to create a substantial conflict, the judgment and order of the court below refusing a new trial will be affirmed.

ID. — NEGLIGENCE — DAMAGE TO WHARF — INEVITABLE ACCIDENT. — When there is material evidence to show that the damage caused to plaintiff's wharf by defendant's schooner being driven against it by a violent gale was the result of inevitable accident, and not of defendant's negligence, as claimed by plaintiff, the finding of the court below that the accident was inevitable will not be disturbed.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*Milton Andros,* and *Charles Page,* for Appellant, cited *The David Dows,* 16 Fed. Rep. 154; *The Mabey and Cooper,* 14 Wall. 204; *Sampson* v. *United States,* 12 Ct. of Cl. 480; *Sterling* v. *The Jennie Cushman,* 3 Cliff. 636; *The Wier* v. *The Padre,* 29 Fed. Rep. 335; *The Fremont,* 3 Saw. 571; *The Louisiana,* 3 Wall. 173; *The Uhla,* 19 L. T., N. S., 89.

*D. T. Sullivan,* for Respondents.

PATERSON, J. — On the thirtieth day of December, 1878, the schooner Alice, then owned by the defendants, arrived at the port of Santa Barbara,-and made fast to plaintiff's wharf for the purpose of discharging her cargo. While the crew were engaged in transferring the cargo of lumber to the wharf, plaintiff notified the master of the schooner that in his (plaintiff's) opinion a heavy gale would soon arise, and that he (said master) should before night cast off the lines and fasts by which

the vessel was attached to the wharf, and haul her up to a certain buoy, which he, the plaintiff, had placed at about one hundred fathoms from the end of the wharf, and make her fast thereto. Early in the afternoon of that day, and after a part of the cargo of lumber had been discharged, the lines holding the schooner to the wharf were thrown off, and she was hauled out toward the buoy, about thirty-five fathoms from where she had been lying at the wharf. A nine-inch hawser was then run out to the buoy. As the storm increased the crew hauled in on the line until the vessel came within fifty fathoms of the buoy. The master dropped the port anchor at the time he made fast to the mooring buoy, but did not drop the second anchor until the vessel had dragged well in toward the wharf. The vessel dragged both the mooring buoy and the anchor, until about seven o'clock in the evening of the 31st of December, when a heavy breeze struck her and drove her into the wharf, causing the injury for which plaintiff claims damages in the sum of five thousand dollars.

It is claimed by appellant, first, "that if the said master of said schooner had pulled up to and made fast said schooner to said buoy in a proper, careful, and skillful manner, and in a proper position with reference to the wind and sea, all danger of said vessel drifting against or striking said wharf by reason of a heavy gale and sea which arose in the afternoon of said 30th of December might have been by him then and there avoided"; and that if he had let the second anchor go when he found his vessel was dragging, the accident would have been averted; second, that the accident might have been easily avoided by casting out the lines and putting out to sea when he found the vessel dragging in toward the wharf; third, that the master was guilty of negligence in not calling upon the steamship Ancon, then lying at the wharf, to tow the schooner out to sea.

The court found the facts upon all the issues in favor of the defendants, and concluded that the accident was inevitable.

We think there was material evidence to support all the findings of the court; and, of course, if there was, under the well-established rule, the judgment and order must be affirmed.

1. The master of the schooner testified that he was forty-five years of age, and had been going to sea for thirty-two years; had been a master mariner seven years in command of schooners and brigs on the coast of California; that at the time of the accident he had a full complement of competent seamen on board. He described the manner in which he made fast to the buoy and cast the port anchor. He continued: "There was nothing else in my judgment which I could have done to make myself secure for the night. . . . . The wind came up about nine or ten o'clock. It blowed pretty fresh, and came in with a rain squall. After that squall came we could not have slipped our cables and gone to sea. . . . . Mr. Stearns told me he had a three-thousand-three-hundred-pound anchor to the buoy, and thirty fathoms of two-and-a-half-inch chain attached to it. *He told me that if I had the hawser I represented I had, he would defy any wind to drag me with that buoy.* . . . . Just about the time when we went into the wharf the breeze struck us and swung us right on. I think that must have been a cyclone or tornado; it was no ordinary wind."

The mate of the schooner — Westerberg — testified that they had the port anchor down all the time with forty-five fathoms of chain, and the hawser out to the buoy; that they had dropped the starboard anchor before she began to drag; that they "could do nothing more, it was so rough"; that they "had all their lines out, — everything dragged." The witness Nelson, who was one of the crew, testified substantially to the same facts, and

said: "Everything was done in a seamanlike and skillful manner."

2. C. Less testified that he was a master mariner; had been going to sea for twenty-two years; had commanded schooners of all sizes, from 45 tons up to 144 tons; that he knew the roadstead of Santa Barbara; had been there about five times, but never in tempestuous weather; knew Stearns's wharf and the buoy called the big buoy; that if a heavy storm broke upon him while he was moored to the big buoy with his anchor down, he could do nothing more; that it would not be prudent for a master mariner seaman, under the circumstances, to attempt to go to sea. W. E. Plummer, another witness on behalf of defendants, testified that he was master of the steamer Newport; had been thirty years a master mariner, thirty-nine years at sea, nine and one half years sailing up and down the coast of California; had been at Santa Barbara a great many times; knew Stearns's wharf, and had discharged cargoes there. The circumstances occurring on the 30th and 31st of December were related to him, and he was asked to say, as an expert, whether in his opinion it would have been prudent to slip the cables and attempt to go to sea. He answered that he would not consider it prudent to attempt to do so; that he would "sooner hold on there."

3. The master of the schooner, and the witnesses Nelson, Less, and Plummer, all testified in substance that it would have been impracticable and dangerous for the steamer Ancon to have towed the schooner to sea. The witness Plummer testified that he had been in command of the Ancon, and that if an attempt had been made by the captain of the Ancon to leave the wharf, in all probability he "would have got across her bow and cross her hawser, and be right athwartships. Then away would go steamboat, wharf, and all."

The foregoing extracts from the testimony show, we think, that the findings of the court are supported by

material evidence. There is sufficient, at least, to make a substantial conflict in the evidence. It is unnecessary for us, therefore, to review the evidence, which tended to support the allegations of the complaint. The learned judge of the court below saw and heard the witnesses, passed upon their credibility, and determined the weight of evidence. We see no abuse of discretion.

Judgment and order affirmed.

McFARLAND, J., and SHARPSTEIN, J., concurred.